IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-94

 No. COA20-29

 Filed 6 April 2021

 Wilkes County, No. 15 JA 200

 IN THE MATTER OF: S.R.J.T.

 Appeal by respondent-mother from orders entered on 17 July 2018 and 27

 September 2019 by Judge David V. Byrd in District Court, Wilkes County. Heard in

 the Court of Appeals 17 November 2020.

 Vannoy, Colvard, Triplett & Vannoy, PLLC, by Daniel S. Johnson, for
 petitioner-appellee Wilkes County Department of Social Services.

 Lisa Anne Wagner for respondent-appellant-mother.

 STROUD, Chief Judge.

¶1 Respondent-Mother appeals from the trial court’s order adjudicating Scottie1

 as a neglected and dependent juvenile and from the trial court’s disposition order

 which ceased reunification efforts and granted guardianship of Scottie to his aunt.

 Because the trial court’s findings support its conclusion that Scottie was neglected,

 we affirm the adjudication order as to neglect, and we affirm in part, reverse in part,

 1 Pseudonyms are used to protect the identity of the juvenile.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 and remand the disposition order for entry of an order containing findings of fact in

 compliance with North Carolina General Statute § 7B-906.1(n).

 I. Background

¶2 Mother has an extensive history with the Wilkes County Department of Social

 Services (“DSS”), and her parental rights were terminated to two children in 2008

 and 2010. DSS initially removed Scottie and his brother2 in 2015 due to issues of

 domestic violence and substance abuse. Scottie was adjudicated neglected, and

 Mother previously appealed this order. On 20 June 2017, this Court reversed the

 trial court’s adjudication order in an unpublished opinion. See In re J.L.T. and

 S.R.J.T., 254 N.C. App. 240, 801 S.E.2d 391 (2017) (unpublished).

¶3 On 3 July 2017, DSS filed a new petition alleging Scottie was neglected and

 dependent. An adjudication hearing was held on 18 December 2017. On 17 July 2018

 the trial court entered an adjudication order which declared Scottie to be neglected

 and dependent. Disposition hearings were held on 8 January 2018, 6 March 2018,

 and 21 August 2018. The written disposition order, entered on 27 September 2019,

 ceased reunification efforts, granted guardianship of Scottie to his paternal aunt, and

 suspended visitation and further hearings. Mother timely appealed from the

 2 Mother has only appealed as to Scottie, and Scottie’s Father is not a party to this appeal.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 disposition order and petitioned this Court for a writ of certiorari in the event we

 found her notice of appeal to be defective.

 II. Petition for Writ of Certiorari

¶4 Mother’s notice of appeal stated, Mother “hereby gives Notice of Appeal to the

 Court of Appeals of North Carolina from the Adjudication Judgment and

 Dispositional Order that was filed on September 27th 2019.” However, the

 adjudication order was filed on 17 July 2018. Because we can infer from the notice of

 appeal that Mother intended to appeal the both the adjudication and disposition

 orders, in our discretion, we allow her petition as to the disposition order. N.C. R.

 App. P. 21(a)(1).

 III. Adjudication

¶5 Mother argues, “[t]he trial court erred by adjudicating Scottie neglected and

 dependent when the trial court failed to make necessary finding of fact, there is

 insufficient evidence to support the findings of fact the trial court did make, and the

 findings that are supported by the evidence are insufficient to support its conclusions

 of law.”

 A. Standard of Review

 We review an adjudication under N.C. Gen. Stat. § 7B-807
 to determine whether the trial court’s findings of fact are
 supported by clear and convincing competent evidence and
 whether the court’s findings support its conclusions of law.
 The clear and convincing standard is greater than the
 preponderance of the evidence standard required in most
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 civil cases. Clear and convincing evidence is evidence
 which should fully convince. . . . [W]e review a trial court’s
 conclusions of law de novo.

 In re N.K., ___ N.C. App. ___, ___, 851 S.E.2d 389, 392 (2020) (quoting In re M.H., ___

 N.C. App. ___, ___, 845 S.E.2d 908, 911 (2020)). Unchallenged findings are binding

 on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

 B. Adjudication of Neglect

¶6 Mother argues, “DSS failed to present any evidence that the children were

 present for, or impacted by, any acts of domestic violence or substance use, or that

 they suffered any physical, mental or emotional impairment as a result.”

¶7 A neglected juvenile is defined as one

 who does not receive proper care, supervision, or discipline
 from the juvenile’s parent, guardian, custodian, or
 caretaker; or who has been abandoned; or who is not
 provided necessary medical care; or who is not provided
 necessary remedial care; or who lives in an environment
 injurious to the juvenile’s welfare[.]

 N.C. Gen. Stat. § 7B-101(15) (2017). “[I]n order for a court to find that the child

 resided in an injurious environment, evidence must show that the environment in

 which the child resided has resulted in harm to the child or a substantial risk of

 harm.” In re K.J.B., 248 N.C. App. 352, 354, 797 S.E.2d 516, 518 (2016). “A trial

 court’s failure to make specific findings regarding a child’s impairment or risk of harm

 will not require reversal where the evidence supports such findings.” Id.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

¶8 Here, the trial court found:

 5. The Respondents have unstable living arrangements
 and maintain a strange, ongoing, and inappropriate
 relationship with one another. [Mother] alternates living
 with [Scottie’s Father] and [Aaron], choosing to stay with
 whichever father has money and drugs to offer to her.

 6. [Mother] and [Scottie’s Father] have failed numerous
 drug screens during the time that the children have been
 in the care of DSS.

 ....

 8. On October 6, 2017, the Respondents submitted to hair
 follicle drug tests and the results were as follows: [Mother]:
 positive for amphetamines and methamphetamine[.]

 9. On October 13, 2017, social worker Carver made a
 surprise visit to [Aaron’s] home. When she arrived, [Aaron]
 was lying on a couch and [Mother] was scurrying around
 the kitchen. [Mother] told social worker Carver that she
 was pouring a beer out. Social worker Carver noticed a
 needle on the kitchen counter, two more needles in the
 sink, a packet of some sort, and a spoon containing a
 burned substance. [Aaron] told the social worker that he
 didn’t know why [Mother] was using the “junk” in his
 home. [Mother] admitted that she was using drugs and
 that she was depressed since her children had not been at
 home.

 ....

 13 Since the children have been in the care of DSS, . . . .
 [Scottie] has been diagnosed with post-traumatic stress
 disorder.

 15. [Scottie] receives counseling from Brooke Gregory at
 Kids Count Pediatrics. Therapist Gregory was duly
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 qualified as an expert witness and provided the following
 opinions regarding [Scottie]:
 (a) He suffers from post-traumatic stress
 disorder as a result of matters he witnessed
 while in the care of [Mother] and [Scottie’s
 Father], including drug use, domestic
 violence, and his mother moving back and
 forth between [Scottie’s Father] and [Aaron];
 (b) He regressed in treatment following visits
 with his parents. Interaction with his parents
 increased his behaviors of acting out, not
 listening, and oppositional defiance;
 (c) He experienced nightmares of being left
 alone and someone cutting his head off after
 contact with his parents;
 (d) He was exposed to sexual behavior during
 the time that he was with his parents. He has
 talked to other children about sexual behavior
 and engaged in sexualized conduct; and
 (e) It is not in the best interests for [Scottie]
 to have visitation with his biological parents.

 And the trial court concluded:

 3. With regard to neglect, each child would be placed at a
 serious risk of impairment in the event that they were
 placed with their parents due to the parents’ ongoing drug
 abuse and their unstable living arrangements. Each of the
 children would be placed at substantial risk of physical,
 mental, and emotional impairment in the event that they
 were returned to their parents.

 1. Finding of Fact No. 15

¶9 Mother raises several arguments regarding Finding of Fact No. 15. Mother

 argues that portions of finding of fact 15(a) and (e) are conclusions of law and should

 be reviewed de novo. We disagree. First, we note that Finding No. 15 is phrased as
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 a recitation of testimony as to facts about the juvenile since it specifically lists the

 observations and opinions of Therapist Gregory. See In re L.C., 253 N.C. App. 67, 70,

 800 S.E.2d 82, 86 (2017). Although recitations of evidence may not allow for

 appropriate appellate review where the trial court fails to make findings

 demonstrating if it found the evidence to be credible, id., when we consider Finding

 No. 15 in the context of the entire order, the trial court did determine the evidence to

 be credible and this finding is supported by the evidence. To the extent that Finding

 15(e) is a finding of fact and not a recitation of testimony, we review the trial court’s

 determination of whether visitation is in the best interest of the juvenile for abuse of

 discretion. In re C.M., 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007) (“This

 Court reviews the trial court’s dispositional orders of visitation for an abuse of

 discretion.”).

¶ 10 Mother also contends Finding 15(d) is not supported by the evidence. Ms.

 Gregory testified about the reasons she saw Scottie:

 Q. Why did you begin work counseling with [Scottie]?

 A. He was referred to my case load due to family
 circumstances where he was removed from his family and
 lives with [his Aunt]. There’s a pretty significant neglect
 and abuse history there, so he has post-traumatic stress
 disorder.

 Q. When did you diagnose [Scottie] with post-traumatic
 stress disorder?
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 A. On 6/14/16.

 Q. And it’s your opinion that that stress disorder resulted
 from abuse and the circumstances that he encountered in
 his parents home?

 A. Yes, sir.

 Q. How did you arrive at that diagnosis?

 A. Well, there are several criteria you need in order to get
 diagnosed with post-traumatic stress disorder. [Scottie]
 exhibits mood changes, anxiety, sleep disturbances, eating
 disturbances, attachment issues, and [Scottie] qualifies for
 all of those.

 ....

 Q. Now, has [Scottie] indicated to you during counseling
 sessions that he had witnessed his parents using illegal
 drugs?

 A. Yes.

 Q. What did he tell you about seeing his parents use illegal
 drugs?

 A. He has talked about seeing needles. There’s an actual
 quote here in the letter from July 19th, 2017 that I
 provided for Department of Social Services. “My parents
 will never get me back because they do drugs. They take a
 shot every day. I have seen them. They put medicine in
 their arm with a shot.”

Ms. Gregory testified, “There has been some sexualized behavior after he has

interacted with his parents that comes out in session. I don’t have enough to pursue
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 that at this moment[.]” On cross examination, Ms. Gregory stated, “I’m not sure

 where the sexualized behavior has come from.”

¶ 11 The portion of the finding of fact 15(d) about exposure to sexual behavior

 “during the time that he was with his parents” is not supported by clear and

 convincing evidence. The rest of the challenged portions of Finding No. 15 are

 supported by clear and convincing evidence which support the trial court’s conclusion

 that Scottie was a neglected juvenile. In re N.G., 186 N.C. App. at 12-13, 650 S.E.2d

 at 52. In addition, these findings, considered along with the other unchallenged

 findings regarding drug abuse and domestic violence in the home, Scottie’s regression

 after visitation with the parents, and the diagnosis of post-traumatic stress disorder

 demonstrate that “the environment in which the child resided has resulted in harm

 to the child or a substantial risk of harm.” In re K.J.B., 248 N.C. App. at 354, 797

 S.E.2d at 518. We affirm the trial court’s adjudication of neglect on this basis and

 need not address the other adjudicatory grounds in the court’s order. See In re F.C.D.,

 244 N.C. App. 243, 250, 780 S.E.2d 214, 220 (2015) (“Because this ground standing

 alone is sufficient to support the adjudication of abuse, we need not address the trial

 court’s two other grounds for adjudicating . . . an abused juvenile.”).

 IV. Disposition Order

¶ 12 Mother argues, “[t]he trial court reversibly erred and abused its discretion by

 ceasing reunification, granting guardianship of Scottie to his paternal aunt at the
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 initial disposition, and waiving review hearings without making statutorily required

 findings.”

 A. Standard of Review

¶ 13 “This Court reviews an order that ceases reunification efforts to determine

 whether the trial court made appropriate findings, whether the findings are based

 upon credible evidence, whether the findings of fact support the trial court’s

 conclusions, and whether the trial court abused its discretion with respect to

 disposition.” In re C.M., 183 N.C. App. at 213, 644 S.E.2d at 594. “An abuse of

 discretion occurs when a trial court’s ruling is so arbitrary that it could not have been

 the result of a reasoned decision.” Id. This Court “review[s] statutory compliance de

 novo.” In re N.K., ___ N.C. App. at ___, 851 S.E.2d at 395.”

 B. Reunification

¶ 14 “Reunification shall remain a primary or secondary plan unless the court made

 findings under G.S. 7B-901(c) or makes written findings that reunification efforts

 clearly would be unsuccessful or would be inconsistent with the juvenile’s health or

 safety.” N.C. Gen. Stat. § 7B-906.2(b) (2017).

 At any permanency hearing . . . the trial court shall make
 written findings as to each of the following, which shall
 demonstrate lack of success:
 (1) Whether the parent is making adequate
 progress within a reasonable period of time
 under the plan.
 (2) Whether the parent is actively
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 participating in or cooperating with the plan,
 the department, and the guardian ad litem for
 the juvenile.
 (3) Whether the parent remains available to
 the court, the department, and the guardian
 ad litem for the juvenile.
 (4) Whether the parent is acting in a manner
 inconsistent with the health and safety of the
 juvenile.

 N.C. Gen. Stat. § 7B-906.2(d) (2017).

 Although “use of the actual statutory language [is] the best
 practice, the statute does not demand a verbatim recitation
 of its language.” Instead, “the order must make clear that
 the trial court considered the evidence in light of whether
 reunification would be futile or would be inconsistent with
 the juvenile’s health, safety, and need for a safe,
 permanent home within a reasonable period of time.”

 In re L.E.W., 375 N.C. 124, 129-30, 846 S.E.2d 460, 465 (2020) (alteration in original)

 (citation omitted).

¶ 15 Here, the trial court found as following regarding Scottie:

 1. The status of the above-named minor children is
 accurately described in the Court Summaries and Reports
 prepared by DSS and the GAL which were introduced into
 evidence for purposes of disposition in these matters and
 are incorporated herein by reference as Findings of Fact.

 2, The children have been declared neglected and
 dependent juveniles as those terms are defined by N.C.G.S.
 § 7B-101.

 3. The children have not been in the custody of their
 parents since the fall of 2015. It would be contrary to the
 children’s health and safety to be returned to the home of
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

a parent as a result of their special needs and the
instability of their parents.

4. There are no issues regarding paternity of the children.
...

5. The Court has considered the requirements of N.C.G.S.
§ 7B-901(c) and finds that DSS should not be required to
utilize reasonable efforts to reunify the children with a
parent. [Mother] and [Scottie’s Father] have had their
parental rights terminated involuntarily to other children.
Each of these parents have a significant history of
substance abuse and their living arrangements are not
suitable. . . .

6. [Scottie] has been placed in the care of his paternal aunt,
[Rebecca], since April 2016. He has been diagnosed with
post-traumatic stress disorder from exposure to domestic
violence, abuse, and his parents’ substance abuse which he
witnessed while in the care of his parents. He displays
anxiety, mood changes, sleep and eating disorders, and
attachment issues. He is fearful of being removed from his
aunt. [Scottie] receives counseling from therapist Brooke
Gregory at Kids Count Pediatrics. Visitation between
[Scottie] and his parents was ceased at the
recommendation of therapist Gregory. [Scottie] has told
the GAL’s office that he does not want to live with his
parents.

....

8. [Rebecca] has the financial means and capability to care
for [Scottie]. She has provided care solely for the child with
no assistance from his parents for over two years. [Rebecca]
understands the legal significance of the appointment and
has adequate resources to care appropriately for the child.
[Scottie] is bonded to his aunt.

9. The children are not members of a state or federally
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 recognized Indian tribe.

The trial court concluded:

 1. The Court has jurisdiction of the subject matter and the
 parties.

 2. DSS made reasonable efforts to prevent or eliminate the
 need for placement of the minor children; however, these
 efforts were not effective in light of the parents’ histories of
 drug abuse, instability, and incarceration. DSS . . . placed
 [Scottie] in the care of a paternal relative.

 3. The best interests of the minor children would be best
 served by the disposition set forth in the Decree below. DSS
 shall not be required to utilize reasonable efforts to reunify
 either child with a parent.

 4. Any Finding of Fact that is a more appropriate
 Conclusion of Law is incorporated herein by reference.

 Based upon the foregoing Findings of Fact and
 Conclusions of Law, it is ORDERED, ADJUDGED, AND
 DECREED that:

 ....

 3. [Rebecca] is appointed as guardian of the person of
 [Scottie] pursuant to N.C.G.S. § 7B-600. No accountings or
 bond shall be required. No further review hearings shall
 be required concerning this child. Neither of [Scottie’s]
 parents shall have any visitation unless the same is
 approved by the Court.

These findings make it clear that the trial court “considered the evidence in light of

whether reunification would be futile or would be inconsistent with the juvenile’s

health, safety, and need for a safe, permanent home within a reasonable period of
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 time.” Id. at 129-30, 846 S.E.2d at 465. In addition, the trial court did not abuse its

 discretion by ceasing reunification efforts based upon these findings.

 C. Guardianship

¶ 16 Mother argues, “[t]he trial court reversibly erred by failing to make necessary

 findings of fact to support its order granting guardianship of Scottie to [Rebecca].”

 Mother argues the trial court did not make a finding that her conduct was

 inconsistent with her constitutionally protected status as a parent and she had

 “participated in a substance abuse assessment and begun receiving [substance abuse]

 treatment, had consistently been providing clean drug screens . . . had inquired of

 DSS what she could provide for Scottie’s needs, and was on waiting lists for housing

 of her own.” DSS argues that Mother did not raise this constitutional issue at trial

 and should not be considered for the first time on appeal.

 “‘[P]arents have a constitutionally protected right to
 the custody, care and control of their child, absent a
 showing of unfitness to care for the child.’” “[A] parent may
 lose the constitutionally protected paramount right to child
 custody if the parent’s conduct is inconsistent with this
 presumption or if the parent fails to shoulder the
 responsibilities that are attendant to rearing a child.”
 Prior to granting guardianship of a child to a nonparent, a
 district court must “clearly address whether [the]
 respondent is unfit as a parent or if [his] conduct has been
 inconsistent with [his] constitutionally protected status as
 a parent[.]” “[A] trial court’s determination that a parent’s
 conduct is inconsistent with his or her constitutionally
 protected status must be supported by clear and convincing
 evidence.”
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 In re R.P., 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017) (alterations in original)

 (citations omitted).

¶ 17 This Court has held that where a parent is on notice that guardianship with a

 third party has been recommended and will be determined at the hearing, if the

 parent fails to raise this argument at the hearing, appellate review of the

 constitutional issue is waived:

 “[T]o apply the best interest of the child test in a
 custody dispute between a parent and a non-parent, a trial
 court must find that the natural parent is unfit or that . . .
 her conduct is inconsistent with a parent’s constitutionally
 protected status.” This finding should be made when the
 court is considering whether to award guardianship to a
 non-parent. To preserve the issue for appellate review, the
 parent must raise it in the court below. However, for
 waiver to occur the parent must have been afforded the
 opportunity to object or raise the issue at the hearing.
 Here, although counsel had ample notice that
 guardianship . . . was being recommended, Respondent-
 mother never argued to the court or otherwise raised the
 issue that guardianship would be an inappropriate
 disposition on a constitutional basis. We conclude
 Respondent-mother waived appellate review of this issue.

 In re C.P., 258 N.C. App. 241, 246, 812 S.E.2d 188, 192 (2018) (first alteration in

 original) (citations omitted).

¶ 18 Here, Mother was on notice of the recommendations of both DSS and the GAL

 of guardianship or custody to be granted to the juvenile’s aunt. The Court Report and

 GAL’s reports prior to the last hearing recommended this plan. Mother did not
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 appear for the hearing and did not present any evidence opposing the

 recommendation of guardianship. Mother did not make any argument regarding her

 constitutional rights and did not make any argument against guardianship on this or

 any other basis. Instead, her counsel’s argument to the trial court addressed

 primarily visitation, as he asked the trial court to maintain Mother’s visitation along

 with drug testing. This argument is overruled.

 D. Waiving Further Review Hearings

¶ 19 Mother argues, “[t]he trial court did not make adequate findings to support its

 decision to waive further review hearings.” North Carolina General Statute § 7B-

 906.1(n) requires the trial court to make the following findings before having review

 hearings less often than every six months:

 (1) The juvenile has resided in the placement for a period
 of at least one year or the juvenile has resided in the
 placement for at least six consecutive months and the court
 enters a consent order pursuant to G.S. 7B-801(b1).
 (2) The placement is stable and continuation of the
 placement is in the juvenile’s best interests.
 (3) Neither the juvenile’s best interests nor the rights of
 any party require that review hearings be held every six
 months.
 (4) All parties are aware that the matter may be brought
 before the court for review at any time by the filing of a
 motion for review or on the court’s own motion.
 (5) The court order has designated the relative or other
 suitable person as the juvenile’s permanent custodian or
 guardian of the person.

 N.C. Gen. Stat. § 7B-906.1(n) (2019).
 IN RE S.R.J.T.

 2021-NCCOA-94

 Opinion of the Court

 This Court has held that the trial court must make written
 findings of fact satisfying each of the above criteria in its
 order. An order which fails to address all of the criteria
 will be reversed and remanded for entry of an order
 containing findings of fact in compliance with N.C. Gen.
 Stat. § 7B-906(b).

 In re M.M., 230 N.C. App. 225, 239, 750 S.E.2d 50, 59 (2013) (citation omitted). The

 trial court’s disposition order, quoted above, is silent as to the third and fourth criteria

 listed above. Accordingly, we reverse this portion of the order and remand for

 additional findings regarding review hearings.

 V. Conclusion

¶ 20 We affirm the adjudication order as to Scottie being a neglected juvenile. We

 affirm the disposition order in part and reverse and remand in part. In particular,

 we reverse the provisions of the disposition order waiving review hearings and

 remand for entry of an order containing findings of fact in compliance with North

 Carolina General Statute § 7B-906.1(n).

 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

 Judge HAMPSON concurs.

 Judge TYSON concurs in part and dissents in part with separate opinion.
 No. COA20-29 – In re S.R.J.T.

 TYSON, Judge, concurring in part, dissenting in part.

¶ 21 I concur with the majority’s opinion holding that both the adjudication and

 disposition orders are properly before this Court. I also concur with the majority’s

 conclusion that the portion of finding of fact 15(d) about Scottie’s purported exposure

 to sexual behavior “during the time that he was with his parents” is not supported by

 clear and convincing evidence. The majority also correctly concludes the trial court’s

 disposition order is silent, does not address the third and fourth statutory criteria,

 and it must be reversed and remanded for additional findings regarding review

 hearings.

¶ 22 The majority’s opinion sets forth the proper standard of review, but it applies

 the incorrect “best interests” standard of appellate review to the adjudication order

 instead of the disposition. Further, the trial court erroneously and unlawfully

 delegated the availability and timing of a parent’s visitation with a child to a

 therapist. Reunification of a child with parents cannot be ceased as a planned and

 statutorily mandated goal prior to the trial court’s threshold findings and conclusions

 of parental unfitness or conduct inconsistent with their parental rights. These errors

 are prejudicial to warrant reversal. I respectfully dissent.

 I. Adjudication

 A. Standard of Review

¶ 23 The majority’s opinion properly states the proper appellate standard of review

 for an appeal of an order of adjudication. This Court reviews a trial court’s
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 adjudication of a child to be a neglected juvenile to determine whether the findings of

 fact are supported by clear and convincing evidence, and whether the conclusions are

 supported by the findings of fact. In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d

 362, 365 (2000) (citations omitted). “The trial court’s conclusions of law are

 reviewable de novo on appeal.” In re K.J.D., 203 N.C. App. 653, 657, 692 S.E.2d 437,

 441 (2010) (citation omitted).

¶ 24 “A trial court must determine by clear and convincing evidence that a parent’s

 conduct is inconsistent with his or her protected status.” Weideman v. Shelton, 247

 N.C. App. 875, 880, 787 S.E.2d 412, 417 (2016) (citations and internal quotation

 marks omitted). The determination of parental unfitness or whether parental

 conduct is inconsistent with the parents’ constitutionally protected status is reviewed

 de novo. In re D.A., 258 N.C. App. 247, 249, 811 S.E.2d 729, 731 (2018).

¶ 25 The majority’s opinion recites the proper standard of review, reviews and

 concludes the findings of fact are insufficient, but then applies the wrong standard of

 review to the orders. Regarding testimony given by Brooke Gregory, the expert

 witness and Scottie’s therapist, the majority’s opinion states: “To the extent that

 Finding 15(e) is a finding of fact and not a recitation of testimony, we review the trial

 court’s determination of whether visitation is in the best interest of the juvenile for

 abuse of discretion.” This assertion is erroneous.

¶ 26 Findings of fact must be supported by clear and convincing evidence to support
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 a statutory conclusion of parental abuse, neglect, or dependency before we review the

 trial court’s “best interests” determination of disposition for an abuse of discretion.

 The testimony of the therapist may be relevant, but clear and convincing evidence

 must support findings and conclusions of unfitness or conduct inconsistent with

 parental rights to deny a parent’s care, custody, and control with her child. See N.C.

 Gen. Stat. § 8C-1, Rule 401 (2019); In re J.C.-B., __ N.C. App. __, 2021-NCCOA-65,

 __ S.E.2d __ (2021); In re J.M., N.M., __ N.C. App. __, 2021-NCCOA-__, __ S.E.2d __

 (2021); In re N.T., A.T. __ N.C. App. __, 2021-NCCOA-50, __ S.E.2d __, 2021 WL

 795438 (2021) (unpublished). Since this finding is threshold and jurisdictional for

 the State to inject itself into the constitutionally protected status and relationship

 between a parent and child, the failure of the trial court to so find is not waived by

 the parents’ failure to expressly assert it. Id.

 B. Neglect and Dependency

¶ 27 A neglected juvenile is defined as a child “whose parent, guardian, custodian,

 or caretaker does not provide proper care, supervision, or discipline; or who has been

 abandoned; or who is not provided necessary medical care; or who is not provided

 necessary remedial care; or who lives in an environment injurious to the juvenile's

 welfare[.]” N.C. Gen. Stat. § 7B-101(15) (2019). Notwithstanding the many errors

 and deficiencies in the order, as is correctly pointed out in the majority’s opinion, the

 majority concludes sufficient evidence shows Scottie is neglected. The majority’s
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 opinion fails to address the unsupported finding and erroneous conclusion that

 Scottie is also dependent.

¶ 28 A dependent juvenile is “in need of assistance or placement because (i) the

 juvenile has no parent, guardian, or custodian responsible for the juvenile’s care or

 supervision or (ii) the juvenile’s parent, guardian, or custodian is unable to provide

 for the juvenile’s care or supervision and lacks an appropriate alternative childcare

 arrangement.” N.C. Gen. Stat. § 7B-101(9) (2019). The trial court’s dependency

 adjudication is also unsupported by findings of fact based upon clear and convincing

 evidence and is properly reversed. Id.

 2. Scottie’s Therapist

¶ 29 At the time of trial, Ms. Gregory, a therapist, had been meeting with Scottie

 twice a month for 18 months. She testified Scottie suffered with PTSD from abuse,

 based upon some of Scottie’s observed behaviors. The trial court considered her

 testimony as an expert witness.

 If scientific, technical or other specialized knowledge will
 assist the trier of fact to understand the evidence or to
 determine a fact in issue, a witness qualified as an expert
 by knowledge, skill, experience, training, or education, may
 testify thereto in the form of an opinion, or otherwise, if all
 of the following apply: (1) The testimony is based upon
 sufficient facts or data. (2) The testimony is the product of
 reliable principles and methods. (3) The witness has
 applied the principles and methods reliably to the facts of
 the case.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 N.C. Gen. Stat. § 8C-1, Rule 702 (2019).

¶ 30 Ms. Gregory failed to explain either the correlation or to establish any

 causation between purported acts of parental neglect or dependency of Scottie and

 his PTSD diagnosis, nor provided any methods or psychoanalysis consistently

 supplied to support that conclusion.

¶ 31 After a year of meeting with Scottie, Ms. Gregory asserted he should not visit

 his parents because his nightmares purportedly increase when he interacts with

 them. Scottie has also told his therapist that he has seen drug paraphernalia in his

 home, and he likes to live with his aunt. Finally, the therapist testified about Scottie’s

 sexualized behaviors because Scottie talked about sex and may have pulled down

 either his or another child’s pants. Ms. Gregory admitted she does not know enough

 about that conduct to form an opinion of its origin or cause. No allegations of sexual

 exposure or abuse of Scottie by his parents are asserted or shown. We all agree part

 of finding of fact 15(d), Scottie’s alleged exposure to sexual behavior “during the time

 that he was with his parents,” is not supported by clear and convincing evidence and

 is erroneous.

¶ 32 Insufficient evidence supports the trial court’s findings of fact. The findings

 are insufficient to support its conclusions of law. A trial court cannot find, adjudicate,

 and conclude a child is neglected or dependent without clear and convincing evidence

 to support the findings and the consequent conclusions. See In re Gleisner, 141 N.C.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 App. at 480, 539 S.E.2d at 365. The orders are properly reversed.

 3. DSS’ Evidence

¶ 33 Evidence and testimony offered by DSS during trial relied heavily upon

 Mother’s alleged previous drug use. The last report DSS offered of purported drug

 use was dated over five months prior to the adjudication hearing.

¶ 34 The trial court concludes:

 3. With regard to neglect, each child would be placed at a
 serious risk of impairment in the event that they were
 placed with their parents due to the parents’ ongoing drug
 abuse and their unstable living arrangements. Each of the
 children would be placed at substantial risk of physical,
 mental, and emotional impairment in the event that they
 were returned to their parents.

¶ 35 Here, as we all agree, the trial court’s order merely repeated allegations and

 testimony of the DSS social worker and Scottie’s therapist, without engaging in the

 required judicial process of reconciling and adjudicating conflicts in the evidence.

 “Effective appellate review of an order entered by a trial court sitting without a jury

 is largely dependent upon the specificity by which the order’s rationale is articulated.”

 Coble v. Coble, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980) (holding each step in

 the logical sequence must be taken by the trial judge, “evidence must support

 findings; findings must support conclusions; conclusions support the judgment”).

 “Where there is a gap, it cannot be determined on appeal whether the trial court

 correctly exercised its function to find the facts and apply the law[.]” Id.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

¶ 36 No clear and convincing evidence supported an adjudication of current neglect

 or dependency outside of generalized assertions. Id. No evidence tends to show

 Scottie has been injured or was at risk of injury in his home environment at the time

 of the adjudication hearing.

 II. Disposition

 A. Ceasing Reunification

¶ 37 Our General Statutes mandate: “Reunification shall be a primary or secondary

 plan unless the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3)

 . . . or the court makes written findings that reunification efforts clearly would be

 unsuccessful or would be inconsistent with the juvenile’s health or safety.” N.C. Gen.

 Stat. § 7B-906.2(b) (2019) (emphasis supplied). The court shall not cease

 reunification efforts without supported findings of fact and conclusions of law which

 state continued efforts would be unsuccessful or inconsistent with the children’s

 health or safety. See In re P.T.W., 205 N.C. App. 589, 595, 794 S.E.2d 843, 848 (2016);

 In re D.A., 258 N.C. App. at 253, 811 S.E.2d at 733-34.

¶ 38 Mother asserts the trial court erred and abused its discretion by ceasing

 reunification efforts without making statutorily required findings of fact. The

 majority’s opinion states that the court’s findings make it clear it considered the

 evidence in light of whether reunification would be futile or inconsistent with the

 juvenile’s health and safety. However, as the trial court points out, Scottie has not
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 been in the custody of Mother since 2015. The court cites Mother’s alleged and past

 history of substance abuse and the unsupported history of Scottie’s PTSD.

¶ 39 The trial court’s order fails to apply the mandatory standard, and its failure

 infringes upon the constitutional rights of the parents to the care, custody and control

 of their children. See In re R.P., 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017)

 (holding a parent has a constitutional right to the care for their children absent a

 showing of unfitness). The order does not show the court concluded reunification with

 Mother would be futile or inconsistent with Scott’s health, safety, and need for a

 permanent home within a reasonable period of time from the date of this adjudication

 to comply with the statute. In re D.A., 258 N.C. App. at 253, 811 S.E.2d at 733-34.

¶ 40 The trial court failed to make the constitutionally and statutorily required

 findings to cease visitation and reunification efforts. In re R.P., 252 N.C. App. at 304,

 798 S.E.2d at 430. These conclusions are properly vacated.

 B. Guardianship

¶ 41 Mother argues the trial court reversibly erred by failing to make necessary

 findings of fact to support the order to grant custody to a third-party.

 Parents have a constitutionally protected right to the
 custody, care and control of their child, absent a showing of
 unfitness to care for the child. A parent may lose the
 constitutionally protected paramount right to child custody
 if the parent’s conduct is inconsistent with this
 presumption or if the parent fails to shoulder the
 responsibilities that are attendant to rearing a child. Prior
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 to granting guardianship of a child to a nonparent, a
 district court must clearly address whether the respondent
 is unfit as a parent or if his conduct has been inconsistent
 with his constitutionally protected status as a parent. A
 trial court’s determination that a parent’s conduct is
 inconsistent with his or her constitutionally protected status
 must be supported by clear and convincing evidence.

 Id. at 304, 798 S.E.2d at 430 (emphasis supplied) (alterations, citations and internal

 quotation marks omitted).

¶ 42 N.C. Gen. Stat. § 7B-600(a) provides “when the court finds it would be in the

 best interests of the juvenile, the court may appoint a guardian of the person for the

 juvenile.” N.C. Gen. Stat. § 7B-600(a) (2019).

¶ 43 Prior to moving to and engaging in any “best interests” analysis, a trial court

 must have previously found “the natural parent is unfit or that his or her conduct is

 inconsistent with a parent’s constitutionally protected status.” In re J.H., 244 N.C.

 App. 255, 272, 780 S.E.2d 228, 241 (2015) (citations omitted); In re J.C.-B., ___ N.C.

 App. at ___, 2021 NCCOA-65, ¶17, __ S.E.2d at __; In re N.T., A.T. 2021-NCCOA-50,

 ¶7, 2021 WL 795438, at *2.

¶ 44 This Court reviews an order “that ceases reunification efforts to determine

 whether the trial court made appropriate findings, whether the findings are based

 upon credible evidence, whether the findings of fact support the trial court’s

 conclusions, and whether the trial court abused its discretion with respect to

 disposition.” In re D.A., 258 N.C. App. at 249, 811 S.E.2d at 731 (citation omitted).
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

¶ 45 The majority’s opinion asserts Mother did not appear for the dispositional

 hearing. This assertion is not consistent with the record. Mother was present in

 court for the hearing on 21 August until 12:15 p.m. Mother had to report to work by

 1:00 p.m. to maintain her employment, as is required under her plan, and this case

 was not called until 4:00 p.m. Her attorney remained present and addressed the

 court on her behalf.

¶ 46 The majority’s opinion also asserts Mother did not make any argument against

 guardianship. Mother produced evidence that she had: (1) participated in a

 substance abuse assessment; (2) received substance abuse treatment; (3) consistently

 provided clean drug screens; (4) exercised visitation with her other child; (5) attained

 and maintained employment; (6) paid child support for her other child; and, (7)

 provided clothing and other items for her children.

¶ 47 Finally, the majority’s opinion asserts Mother did not make an argument

 regarding her constitutional parental rights. Mother’s counsel argued her case had

 already been sent back from this Court previously, referring to this Court’s reversal

 of the earlier adjudication for lack of clear and convincing evidence to support findings

 of neglect and dependency. See In re J.L.T., 254 N.C. App. 240, 801 S.E.2d 391, 2017

 WL 2644127 at *6 (2017) (unpublished).

¶ 48 Mother’s counsel continued, “I would ask the [c]ourt not to change the plans

 for [Scottie], leave it reunification (sic) without something more recent to start the
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 visits.” Counsel referred to DSS having produced no new evidence in the more than

 eight months since the adjudication hearing, implying this case lacked the required

 evidence, as this Court concluded the earlier order had, and reunification should

 remain the primary plan. An argument for or to continue reunification is an assertion

 to uphold the Mother’s constitutional right to custody and care of her child. See In re

 P.T.W., 205 N.C. App. at 595, 794 S.E.2d at 849; In re D.A., 258 N.C. App at 253, 811

 S.E.2d at 733-34.

¶ 49 DSS reported her visits with her other child were going well. She inquired of

 DSS how she could provide for Scottie’s needs. She has applied for and has been

 placed on waiting lists for her own housing.

¶ 50 The 27 September 2019 dispositional order does not contain any findings of

 fact or conclusions of law that Mother is unfit or that her conduct is inconsistent with

 her constitutionally protected status as a parent. See id. Further, the findings

 supporting Ms. Gregory’s recommendation were more than eight months old at the

 time of the disposition hearing. No clear and convincing or timely evidence supports

 such findings. Further, the trial court’s order contains no findings and ignores

 Mother’s efforts and accomplishments to comply with her case plan. See Coble, 300

 N.C. at 714, 268 S.E.2d at 190.

¶ 51 The majority’s opinion correctly recognizes the foundational parental rights to

 the care, custody, and control of their children, but errs in affirming the trial court’s
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 decision to cease reunification and award custody to a third-party without proof of

 either unfitness or conduct inconsistent with being a parent. The trial court failed to

 make the statutorily required findings to support its grant of guardianship. The

 findings do not support such conclusion. The order is properly vacated and remanded.

 See In re J.H., 244 N.C. App. at 272, 780 S.E.2d at 241.

 III. Waiver of Further Review Hearings

¶ 52 The disposition order provides “No further review hearings shall be required

 concerning [Scottie].” Mother correctly argues the trial court failed to make the

 statutorily required findings to support waiver of future review hearing.

¶ 53 N.C. Gen. Stat. § 7B-906.1 mandates a trial court to make all five of the

 following enumerated findings of fact supported by clear, cogent, and convincing

 evidence before future review hearings may be waived.

 (1) The juvenile has resided in the placement for a period
 of at least one year or the juvenile has resided in the
 placement for at least six consecutive months and the court
 enters a consent order pursuant to G.S. 7B-801(b1).

 (2) The placement is stable and continuation of the
 placement is in the juvenile’s best interests.

 (3) Neither the juvenile’s best interests nor the rights of
 any party require that review hearings be held every six
 months.

 (4) All parties are aware that the matter may be brought
 before the court for review at any time by the filing of a
 motion for review or on the court’s own motion.
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 (5) The court order has designated the relative or other
 suitable person as the juvenile’s permanent custodian or
 guardian of the person.

 N.C. Gen. Stat. § 7B-906.1(n) (2019).

¶ 54 “The trial court must make written findings of fact satisfying each of the

 enumerated criteria listed in N.C. Gen. Stat. § 7B-906.1(n) [and its] failure to do so

 constitutes reversible error.” In re P.A., 241 N.C. App. 53, 66, 772 S.E.2d 240, 249

 (2015) (citation omitted). This Court has previously held that strict compliance with

 these statutory provisions is mandatory before a trial court may discontinue and

 waive review hearings. In re K.L., 254 N.C. App. 269, 284, 802 S.E.2d 588, 598 (2017).

¶ 55 Mother argues the trial court only addressed: (1) Scottie’s placement is in the

 care of his aunt for more than a year; and, (5) Scottie’s guardian is a relative. I concur

 with the majority’s opinion that the trial court failed to address N.C. Gen. Stat. § 7B-

 906.1(n) prongs (3) and (4). The trial court failed to make the required findings to

 support waiver of further review hearings. The proper mandate in the absence of the

 required findings is to vacate and remand. See id.

 IV. Conclusion

¶ 56 I concur with the majority’s opinion that both issues of adjudication and

 disposition are properly before this Court. I also concur with the majority’s conclusion

 finding of fact 15(d) about Scottie’s purported exposure to sexual behavior “during the

 time that he was with his parents” is not supported by clear and convincing evidence,
 IN RE S.R.J.T.

 2021-NCCOA-94

 Tyson, J., concurring in part, dissenting in part

 and the trial court’s disposition order is silent on the third and fourth statutory

 criteria and must be vacated and remanded for additional findings regarding review

 hearings.

¶ 57 The trial court failed to make the threshold conclusion of unfitness or conduct

 inconsistent with parental rights to cease reunification. Further, the trial court failed

 to find clear and convincing evidence to support the findings and conclusions for

 adjudication, prior to proceeding to any “best interests” analysis in disposition.

¶ 58 The trial court failed to comply with the statute’s mandatory findings of all

 factors to grant guardianship to a third-party. The orders are properly vacated and

 remanded. I respectfully concur in part and dissent in part.